IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEITH DEMERICK BUGG,

    Petitioner,

v.                                          Civil Action No. 3:15CV759

HAROLD W. CLARKE,

    Respondent.

## MEMORANDUM OPINION

Keith Demerick Bugg, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his convictions in the Circuit Court for the County of Mecklenburg, Virginia ("Circuit Court"). Bugg demands relief upon the following grounds:[1]

Claim One    Counsel "failed to file a proper motion notifying the trial court of an alibi defense or seek a continuance to cure the defect, thus denying the petitioner his right to present this defense." (§ 2254 Pet. 5.)

Claim Two    Counsel "failed to investigate and subpoena witnesses provided by petitioner (Patrick Seward and Jami Snead) to impeach alleged victim complaint." (*Id.* at 7.)

Claim Three    "Counsel failed to investigate evidence provided by petitioner proving that he could not have committed the alleged crimes." (*Id.* at 8.)

Respondent has moved to dismiss. As Bugg's claims are utterly lacking in merit, the Motion to Dismiss (ECF No. 22) will be GRANTED.

## I. PROCEDURAL HISTORY

Following a bench trial, the Circuit Court convicted Bugg of four counts of carnal knowledge of a child thirteen years or older, but younger than fifteen years of age and one count of forcible sodomy. (June 12, 2012 Tr. 7–12, 98.) The Circuit Court sentenced Bugg to an

---

[1] The Court corrects the capitalization and spelling in the quotations from Bugg's submissions.

active twenty-year term of imprisonment. (Sept. 12, 2012 Tr. 16.) Bugg unsuccessfully appealed. The Court of Appeals of Virginia aptly summarized the evidence of Bugg's guilt as follows:

> [T]he evidence proved that in March 2010 when the victim was thirteen years old, she met appellant. Later that day, appellant came to the victim's residence and the two engaged in consensual sexual intercourse. The victim further testified that she had intercourse with appellant on another occasion in March and twice in May 2010.
> The victim testified that on the first occasion, she and appellant "had sex." She explained by "'sex'" she meant "vaginal intercourse" and confirmed appellant's penis penetrated her vagina. In describing the three subsequent incidents, the victim testified again that she and appellant "had sex" and confirmed she meant "vaginal intercourse."
> On April 8, 2011, appellant picked up the victim and drove to his residence. The victim explained the two remained in the car. She testified appellant "wanted [her] to have oral sex with him." When she refused, appellant grabbed her by the hair and pulled her down to his exposed penis. The victim resisted, but appellant "told [her] . . . that [she] was going to do it anyway." While appellant pushed her head down, she "just did it." She confirmed she "perform[ed] oral sex on him" until he ejaculated.

*Bugg v. Commonwealth*, No. 1844–12-2, at 3 (Va. Ct. App. Sept. 6, 2013).

On September 16, 2015, Bugg filed a state petition for a writ of habeas corpus with the Supreme Court of Virginia wherein he raised a more fulsome version of Claims One through Three. (ECF No. 14–1, at 17–18.) On April 18, 2016, the Supreme Court of Virginia dismissed the state petition for a writ of habeas corpus. (ECF No. 28–1, at 1–3.)

## II. THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted

only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### III. PURPORTED INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. Standard of Review

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective

assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

## B. Analysis

In Claim One, Bugg complains that counsel "failed to file a proper motion notifying the trial court of an alibi defense or seek a continuance to cure the defect, thus denying the petitioner his right to present this defense." (§ 2254 Pet. 5.) In Claim Two, Bugg contends that counsel "failed to investigate and subpoena witnesses provided by petitioner (Patrick Seward and Jami Snead) to impeach alleged victim complaint." (*Id.* at 7.) In his § 2254 Petition, Bugg supplies no facts to support this alibi defense or explain how Seward and Snead could have aided the defense. Nevertheless, as explained below, review of the state court record and trial counsel's affidavit in particular (ECF No. 24–1, at 1–5)[2] demonstrates that Bugg had no viable alibi and that Seward and Snead could not assist the defense.

Brendan U. Dunning, trial counsel for Bugg, provided a detailed account of the difficulty posed by Bugg's lack of candor. Dunning states:

> Mr. Bugg gave me several different avenues with which he wanted me to defend him. His prior counsel, Mr. Mark Mokris, had asked to be removed from representation due to Mr. Bugg's continuous changing of his defense. I spoke with Mr. Mokris upon my appointment to Mr. Bugg's case. He told me that Mr. Bugg had changed his desired defense so many times that he did not feel that he could call him to the stand ethically.
> During my representation, Mr. Bugg changed the facts upon which he wanted to defend his case several times. However, he prefaced each changed scenario with a disclaimer that he had invented the previous scenario in order to test my ability and dedication as an attorney. Upon presenting the subsequent story, he would then say that since I had pursued the prior claim, he trusted me to devote myself to dealing with the true facts in preparing for trial. He denied, and later admitted having oral sex with the victim.
> Over several meetings, Mr. Bugg laid out several different possible defense theories: that the victim had lied about her age; that he never knew the victim at all; that he had suffered medical issues from a robbery and therefore

---

[2] The Court employs the pagination assigned Dunning's Affidavit by CM/ECF. The Court omits the heading in the quotation from Dunning's Affidavit.

4

> could not have been thinking about sex; that he had been arrested on a driving charge; and that he was in a hotel with a group of people on April 8, the day of the forcible sodomy charge.
>
> I explained that knowledge of age is not a requirement of either of his charges, and that it would only be relevant if he had indeed had sex with the victim. I examined the hospital papers showing his injuries from the robbery and explained that they did not legally constitute a strong defense to the charges. The driving charges did not have any relevance to the charges. The only remaining defense then was the alibi defense.
>
> Mr. Bugg presented me with a list of people who he claimed could alibi him on April 8. I explained that in order to constitute an actual defense, the alibi would need to cover the entire time period of the alleged incident on the date in question, not just show that he had been at the hotel.

(*Id.* at 2.)

Mr. Dunning further explains that, despite diligent efforts, he could not find any viable evidence to support Bugg's alibi:

> At my first meeting with Mr. Bugg, on February 7, 2012, he gave me a list of witnesses who he claimed would testify that he was in a hotel in South Hill during the time of the alleged sexual contact. I spent a great deal of time attempting to find these witnesses. . . . In the course of tracking down and interviewing his proposed witnesses, I discovered that none of them were able to alibi Mr. Bugg in a manner such as to constitute a defense to the charge of forcible sodomy (the only charge for which he claimed to have an alibi).
>
> The witnesses that Mr. Bugg identified were very hard to find. Mr. Bugg stated that they were willing to come to help his case, and that his mother was working on arranging their participation. However, of the initial six witnesses Mr. Bugg provided me, only one was able to be contacted by phone and returned my call. The witnesses ultimately did not alibi Mr. Bugg. In fact, many of their statements contradicted Mr. Bugg's claims. When I found them all, after much effort, their testimony would have been the following:
> 1. Tarsha Garnes: Did not know anything about the date in question, but stated that Mr. Bugg was at the hotel with the underage victim on a regular basis;
> 2. Twanda Patterson: Remembered seeing Mr. Bugg at the hotel, but did not remember the exact date. On the date she did see him, she did not know where the defendant was during much of the day;
> 3. Jamie Snead: Told the victim to stay away from Mr. Bugg because he was "bad news." She stated that Mr. Bugg was also her drug dealer;
> 4. Patrick Seward: Did not know anything about this matter. He also did not know Mr. Bugg very well;
> 5. One other witness (not identified by name in my notes): Did not know anything about the case;

> 6. Another witness (not identified by name in my notes): Did not know who Mr. Bugg is;
> 7. Jessica Elder: Does not know anything about the case.
>
> I explained to Mr. Bugg that under [Virginia Supreme Court] Rule 3A:11 (c)(2), we would need to disclose an alibi to the Commonwealth's Attorney if we were to use one at trial. Since the witnesses that he identified as being present at the hotel did not alibi him, it was impossible to send a notice of alibi without evidence to support it. Although, Mr. Bugg stated to me that he was in the hotel on the day of the forcible sodomy, he never was able to substantiate that with the witnesses that he had initially stated could alibi him. On a meeting of June 13, 2012, Mr. Bugg admitted that Snead, Seward and Jessica Elder could not alibi him. I explained to Mr. Bugg, disclosing witnesses as alibi witnesses, to the Commonwealth who do not alibi him would result in the Commonwealth calling those witnesses to contradict him at trial, thereby destroying his alibi defense. We agreed that we would not disclose the alibi defense until such time as we had the evidence to support it.

(*Id.* at 2–3.)

Given this record, the Supreme Court of Virginia rejected Claim One because Bugg could not demonstrate deficiency or prejudice and explained that:

> The record, including the affidavit of counsel, counsel's exhibits, and the trial transcript, demonstrates that petitioner provided counsel with a list of individuals petitioner claimed would testify that he was in a hotel in South Hill on the day of the forcible sodomy, including Garnes, Patterson, and Elder. Counsel spoke with each of petitioner's witnesses and discovered none of them could provide petitioner with an alibi. Further, Garnes told counsel she had seen petitioner at the hotel with the victim "on a regular basis." Counsel discussed this with petitioner and explained that if petitioner were to file an alibi notice using witnesses who could not provide petitioner with an alibi, the Commonwealth could potentially use these witnesses against petitioner. Counsel and petitioner agreed that they would not disclose an alibi defense to the Commonwealth until they had evidence to support it. In addition, although petitioner refused to tell counsel what helpful testimony they could give, petitioner insisted counsel subpoena several witnesses for trial, including [Heather] Wright. Counsel did so, but Wright failed to appear. After discussing the matter with counsel, petitioner told the trial court he did not desire a continuance and that he wanted to proceed without Wright.

(ECF No. 28-1, at 1–2.) The Supreme Court of Virginia's rejection of Claim One was entirely reasonable. *See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, Claim One will be DISMISSED.

Claim Two, wherein Bugg contends that counsel failed to investigate and subpoena Patrick Seward and Jami Snead to impeach the victim, is equally lacking in merit. As reflected above, counsel interviewed both of these individuals and they were unable to provide information helpful to the defense. Therefore, Bugg fails to demonstrate deficiency or prejudice. Accordingly, Claim Two will be DISMISSED.

Finally, in Claim Three, Bugg complains that "[c]ounsel failed to investigate evidence provided by petitioner proving that he could not have committed the alleged crimes." (§ 2254 Pet. at 8.) Such a conclusory allegation provides no basis for habeas relief. *Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"); *see United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation"); *Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1990) (dismissing claims where petitioner failed to make an adequate proffer of testimony of witness). Moreover, the record affirmatively demonstrates that counsel diligently investigated the information provided by Bugg but that investigation did not lead to any viable exculpatory information. Because Bugg fails to demonstrate deficiency or prejudice, Claim Three will be DISMISSED.

## IV. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 22) will be GRANTED. The § 2254 Petition will be DENIED. Bugg's claims and this action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

/s/ *signature*
Roderick C. Young
United States Magistrate Judge

Date: November 10, 2016
Richmond, Virginia

8